Raph Graybill
**GRAYBILL LAW FIRM, PC**
300 4th Street North
P.O. Box 3586
Great Falls, Montana 59403
rgraybill@silverstatelaw.net
ph. (406) 452-8566

Jonathan P. Hawley
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
jhawley@elias.law
ph. (206) 656-0179

Aria C. Branch*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue, Suite 400
Washington, D.C. 20001
abranch@elias.law
ph. (202) 968-4490

*Attorneys for Plaintiffs*

*Admitted pro hac vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANA PUBLIC INTEREST RESEARCH GROUP; MONTANA FEDERATION OF PUBLIC EMPLOYEES, <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State; AUSTIN KNUDSEN, in his official capacity as Montana Attorney General; CHRIS GALLUS, in his official capacity as Montana Commissioner of Political Practices, <br><br> Defendants. | CV 23-70-H-BMM-KLD <br><br><br><br> PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE BY THE REPUBLICAN NATIONAL COMMITTEE AND THE MONTANA REPUBLICAN PARTY |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

EXHIBIT INDEX ........................................................................... vii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................3

    I.    Movants have not satisfied the requirements for intervention as of right under Rule 24(a). .....................................................................5

        A.    Movants have not identified cognizable interests that will be impaired or impeded by this lawsuit. .........................................6

        B.    Movants have not made a compelling showing of inadequate representation. ........................................................................15

    II.    Movants should not be allowed permissive intervention under Rule 24(b). ....................................................................................17

CONCLUSION ...............................................................................20

CERTIFICATE OF COMPLIANCE ....................................................22

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Allen Calculators v. Nat'l Cash Reg. Co.*,
   322 U.S. 137 (1944) ................................................................. 18

*Ariz. Democratic Party v. Hobbs*,
   No. CV-20-01143-PHX-DLR, 2020 WL 6559160 (D. Ariz. June
   26, 2020) ............................................................................. 20

*Bost v. Ill. State Bd. of Elections*,
   75 F.4th 682 (7th Cir. 2023) ........................................... 7, 18

*Carrington v. Rash*,
   380 U.S. 89 (1965) ................................................................. 15

*Common Cause Ind. v. Lawson*,
   No. 1:17-cv-03936-TWP-MPB, 2018 WL 1070472 (S.D. Ind. Feb.
   27, 2018) .............................................................................. 9

*Common Cause R.I. v. Gorbea*,
   No. 1:20-CV-00318-MSM-LDA, 2020 WL 4365608 (D.R.I. July
   30, 2020) .............................................................................. 11

*Crawford v. Marion County Election Board*,
   553 U.S. 181 (2008) ............................................................... 9

*Democracy N.C. v. N.C. State Bd. of Elections*,
   No. 1:20CV457, 2020 WL 6591397 (M.D.N.C. June 24, 2020) ...................... 11

*Democratic Exec. Comm. of Fla. v. Detzner*,
   347 F.Supp.3d 1017 (N.D. Fla. 2018) ....................................... 8

*Democratic Nat'l Comm. v. Bostelmann*,
   No. 20-cv-249-wmc, 2020 WL 1505640 (W.D. Wis. Mar. 28,
   2020) .................................................................................... 16

*Donald J. Trump for President, Inc. v. Benson*,
   No. 1:20-cv-1083, 2020 WL 8573863 (W.D. Mich. Nov. 17, 2020) ............... 4

*Donald J. Trump for President, Inc. v. Boockvar*,
   493 F.Supp.3d 331 (W.D. Pa. 2020) ......................................... 9

*Donald J. Trump for President, Inc. v. Cegavske*,
   No. 2:20-CV-1445 JCM (VCF), 2020 WL 5229116 (D. Nev. Aug.
   21, 2020) ............................................................................................4

*Eu v. San Francisco County Democratic Central Committee*,
   489 U.S. 214 (1989)...........................................................................9

*Finke v. State ex rel. McGrath*,
   2003 MT 48, 314 Mont. 314, 65 P.3d 576 ........................................10

*Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*,
   No. CV 22-168-M-DLC, 2023 WL 2712391 (D. Mont. Mar. 30,
   2023) .................................................................................................16

*Issa v. Newsom*,
   No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal. June
   10, 2020) ............................................................................................4

*La Union del Pueblo Entero v. Abbott*,
   29 F.4th 299 (5th Cir. 2022) ..........................................................4, 12

*Lance v. Coffman*,
   549 U.S. 437 (2007)...........................................................................10

*California ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006) ..............................................................5

*Mi Familia Vota v. Hobbs*,
   No. CV-21-01423-PHX-DWL, 2021 WL 5217875 (D. Ariz. Oct.
   4, 2021) ............................................................................................20

*Mi Familia Vota v. Hobbs*,
   No. CV-22-00509-PHX-SRB, slip op. (D. Ariz. June 23, 2022).....14, 16, 17, 18

*Miracle v. Hobbs*,
   333 F.R.D. 151 (D. Ariz. 2019)...............................................1, 10, 17

*Northern Arapaho Tribe v. LaCounte*,
   No. CV-16-11-BLG-BMM, 2016 WL 8710178 (D. Mont. Apr. 4,
   2016) .................................................................................................20

*Paher v. Cegavske*,
No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ....................................................................................4

*Pavek v. Simon*,
No. 19-cv-3000, 2020 WL 3960252 (D. Minn. July 12, 2020)..........................4

*Perry v. Proposition 8 Off. Proponents*,
587 F.3d 947 (9th Cir. 2009) ...................................................5, 6, 15

*Priorities USA v. Wis. Elections Comm'n*,
No. 23-CV-1900, slip op. (Wis. Cir. Ct. Oct. 27, 2023) .........................6, 13, 19

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)................................................................13, 14

*S. Cal. Edison Co. v. Lynch*,
307 F.3d 794 (9th Cir. 2002) .............................................................5

*Shays v. FEC*,
414 F.3d 76 (D.C. Cir. 2005)...........................................................8

*Sierra Club, Inc. v. EPA*,
358 F.3d 516 (7th Cir. 2004) ...........................................................9

*Sokaogon Chippewa Community v. Babbitt*,
214 F.3d 941 (7th Cir. 2000) ...........................................................8

*Swenson v. Bostelmann*,
No. 20-cv-459-wmc, 2020 WL 8872099 (W.D. Wis. June 23, 2020) ....................................................................................4

*Trump v. Bullock*,
No. CV 20-66-H-DLC, 2020 WL 5517169 (D. Mont. Sept. 14, 2020) ..........................................................................*passim*

*Trump v. Wis. Elections Comm'n*,
No. 20-cv-1785-bhl, 2020 WL 7230960 (E.D. Wis. Dec. 8, 2020) ....................4

*Yazzie v. Hobbs*,
No. CV-20-08222-PCT-GMS, 2020 WL 8181703 (D. Ariz. Sept. 16, 2020) ..............................................................16, 18

**Statutes**

Mont. Code Ann. § 13-1-111 ..................................................................10

Mont. Code Ann. § 13-1-112 ..................................................................10

Mont. Code Ann. § 13-2-110 ..................................................................10

Mont. Code Ann. § 13-2-402 ..................................................................10

Mont. Code Ann. § 13-35-210 ..................................................................8

**Other Authorities**

Fed. R. Civ. P. 24 ..................................................................17

# EXHIBIT INDEX[*]

| No. | Description | Short Name |
| --- | --- | --- |
| 1 | *Priorities USA v. Wis. Elections Comm'n*, No. 23-CV-1900, slip op. (Wis. Cir. Ct. Oct. 27, 2023) | Priorities USA v. Wisconsin Elections Commission |
| 2 | *Mi Familia Vota v. Hobbs*, No. CV-22-00509-PHX-SRB, slip op. (D. Ariz. June 23, 2022) | Mi Familia Vota v. Hobbs |

---

[*] The exhibits are attached to the declaration of Jonathan P. Hawley, filed concurrently with Plaintiffs' response.

## INTRODUCTION

Plaintiffs Montana Public Interest Research Group ("MontPIRG") and Montana Federation of Public Employees ("MFPE") are nonpartisan organizations that advocate for the voting rights of not only their members and constituents, but *all* eligible Montanans. In this lawsuit, they seek to enjoin unconstitutionally vague and overbroad provisions of House Bill 892 ("HB892") to ensure that *no* qualified Montana voter—no matter their partisan affiliation or how they intend to vote—is put at risk of criminal prosecution simply because they try to exercise their fundamental rights.

Movants Republican National Committee and Montana Republican Party seek to "introduce unnecessary partisan politics into an otherwise nonpartisan legal dispute." *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019) (cleaned up) (denying intervention to Republican legislators). Although it is true that political party organizations are often granted intervention in voting-related cases, it is not because some special rule applies to them. Like any other proposed intervenor under Rule 24, political parties must still identify specific cognizable interests, explain how the litigation will impair or impede those interests, and articulate why the existing parties will not adequately represent those interests. Where political party organizations have failed to satisfy any of these elements, courts have properly declined to allow intervention.

1

Such is the case here. While Movants claim various interests—some of which courts have squarely rejected as valid grounds for intervention—they uniformly fail to explain *how* those interests will be affected by the disposition of this suit. Moreover, they have not made the requisite showing of inadequate representation given that they and Defendants would pursue the same goal in this litigation: defending the constitutionality of HB892. Movants therefore have not satisfied the requirements for intervention as of right. Nor should the Court allow permissive intervention: Because Movants have not shown how their participation will meaningfully assist the adjudication of this matter, intervention would only impose additional, unnecessary burdens on Plaintiffs and the Court.

This Court has declined to act as a rubber stamp for generalized intervention motions by politically interested organizations, particularly where, as here, they seek to intervene as defendants aligned with the government. In *Trump v. Bullock*, as a telling example, the Court denied the League of Women Voters of Montana's motion to intervene as a defendant, noting that it was "skeptical that the [proposed intervenor-defendant] will present arguments in support of the constitutionality of the" challenged government action "different than those asserted by the existing parties to this case." No. CV 20-66-H-DLC, 2020 WL 5517169, at *2 (D. Mont. Sept. 14, 2020). The Court "presume[d] that" the existing defendants were "capable and willing to defend the constitutionality" of the challenged action, and

found that the proposed intervenor-defendant "would not provide this litigation with any necessary elements not currently attended to by the parties." *Id.* The Court denied intervention both as of right and permissively. *Id.*

The Court should reach the same conclusion here. Movants have merely recited generalized, boilerplate concerns about their interests without explaining how they might be impeded or inadequately represented. "[B]ecause [they] seek[] to intervene for the purposes of defending the constitutionality of [HB892], . . . [their] intervention would simply be piling onto the arguments advanced by the other parties to this litigation." *Id.* Movants' intervention motion should therefore be denied.

## ARGUMENT

Plaintiffs do not dispute that, in many voting-rights cases, political parties might "bring[] a unique perspective" that justifies intervention. Br. in Supp. of Mot. to Intervene by Republican National Committee & Montana Republican Party ("Mot.") 1, ECF No. 8 (alteration in original) (quoting *Democratic Party of Va. v. Brink*, No. 3:21-cv-756-HEH, 2022 WL 330183, at *2 (E.D. Va. Feb. 3, 2022)). But this is not because some exception to Rule 24 allows them to intervene whenever a case relates to elections. Instead, political parties are permitted intervention when they show that they have a specific, concrete interest that stands to be impeded or impaired by the litigation—just like any other putative intervenor.

3

Accordingly, political parties might be granted intervention because, for example, the voting rights of their members and voters are threatened,[1] or the electoral success of their candidates is called into question,[2] or a lawsuit jeopardizes their candidates' competitive advantage.[3] Indeed, in the cases Movants cite in their intervention motion, *see id.* at 1–2 n.1, Republican Party entities articulated such grounds for intervention.[4]

---

[1] *See, e.g.*, *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020) (granting intervention to political party organizations based on "distinct interest in ensuring that voters of the Democratic Party can vote"); *Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention to political party organizations based on articulated interests of "asserting the rights of their members to vote safely without risking their health" and "advancing their overall electoral prospects").

[2] *See, e.g.*, *Trump v. Wis. Elections Comm'n*, No. 20-cv-1785-bhl, 2020 WL 7230960, at *1 (E.D. Wis. Dec. 8, 2020) (granting intervention to political party based on "interests in preserving the results of the November 2020 election, interests that are threatened by plaintiff's request for relief"); *Donald J. Trump for President, Inc. v. Benson*, No. 1:20-cv-1083, 2020 WL 8573863, at *3 (W.D. Mich. Nov. 17, 2020) (similar).

[3] *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention where "claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates"); *Pavek v. Simon*, No. 19-cv-3000 (SRN/DTS), 2020 WL 3960252, at *3 (D. Minn. July 12, 2020) (granting intervention to Republican Party committees where challenged "Ballot Order statute's ordering requirements . . . typically benefitted Republican candidates").

[4] *See, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022) (allowing intervention of Republican Party committees where their stated interests "primarily rely on the expenditure of their resources to equip and educate their members," which no other party could vindicate); *Swenson v. Bostelmann*, No. 20-

Here, by contrast, Movants have not made a sufficient case for intervention, either as of right or permissively. They have neither tied their articulated interests to the disposition of this litigation nor explained why Defendants will not adequately protect their interests such that Movants' participation is required. Permitting Movants to intervene would serve only to unnecessarily complicate these proceedings and burden Plaintiffs and the Court without justification or benefit. Their motion should be denied.

## I.   Movants have not satisfied the requirements for intervention as of right under Rule 24(a).

Intervention as of right is reserved for parties that demonstrate direct and specific interests in an action, not merely "undifferentiated" or "generalized" interests. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (cleaned up); *see also S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) ("[A]n undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." (cleaned up)). Parties must also show that "the disposition of the action may impair or impede the party's ability to protect that interest," and that their interest is not adequately represented by existing parties. *Perry v. Proposition 8 Off.*

---

cv-459-wmc, 2020 WL 8872099, at *2 (W.D. Wis. June 23, 2020) (allowing intervention in unusual case that was "one of four closely overlapping lawsuits, in all of which [Republican Party] is already a party").

*Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003)). "Failure to satisfy any one of the requirements is fatal to the application[.]" *Id.*

> **A.   Movants have not identified cognizable interests that will be impaired or impeded by this lawsuit.**

Movants have not identified sufficient, cognizable interests that might be impaired or impeded by the disposition of this litigation. Intervention as of right should therefore be denied. *See, e.g.*, *Priorities USA v. Wis. Elections Comm'n*, No. 23-CV-1900, slip op. at 5 (Wis. Cir. Ct. Oct. 27, 2023) (attached as Ex. 1) (denying intervention as of right to putative Republican Party intervenors under analogous state intervention rule where "[i]t's far from clear that [their] claimed interests are sufficiently related to this action or that the disposition of this case may impair or impede the GOP Intervenors' ability to protect those interests").

**Participation in the political process.** Movants claim that they "have 'a direct and substantial interest in the proceedings' because they 'affect [their] ability to participate in . . . the election processes in [Montana].'" Mot. 6 (first and third alterations in original) (quoting *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) ("*LUPE*")). But Movants never elaborate—they do not explain *how* this lawsuit could impact their "ability to participate" in the political process, let alone to their detriment. Nor is it obvious what injury Movants believe they would suffer if Plaintiffs succeed in this litigation. Plaintiffs seek an

6

injunction to "ensure that Montanans can freely exercise their fundamental constitutional rights," Compl. for Declaratory & Injunctive Relief ("Compl.") ¶ 6, ECF No. 1—in other words, to *expand* access to the political process, not inhibit it. MontPIRG is a nonpartisan organization, MFPE's members include Republicans, and both groups are dedicated to robust political participation from *all* Montanans, including Movants' supporters. *Id.* ¶¶ 10, 12, 14–16. If Plaintiffs obtain the relief they seek, all Montana voters—including Movants' members and constituents—will have a *greater* ability to participate in the political process. Movants do not offer an explanation that would justify a conclusion to the contrary.[5]

Nor have Movants explained how the relief Plaintiffs seek would somehow interfere with their competitive advantage in the electoral process. Republican voters will benefit from the expanded voting opportunities Plaintiffs seek no less than any other Montanans. *Contra Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023) (recognizing political party's interest in intervening as

---

[5] Moreover, to the extent Movants seek to "ensur[e] . . . [their] members can exercise their franchise," this is an interest shared not only by Plaintiffs, but also by "any number of politically involved organizations in Montana." *Trump*, 2020 WL 5517169, at *2 (denying intervention as of right and permissive intervention). As such, "[i]f this Court were to permit [Movants] to intervene on this basis alone, it would be hard pressed to deny future motions seeking intervention from any number of the hundreds of organizations who engage in such efforts from a partisan or nonpartisan standpoint." *Id.* The Court should not, "[a]s a matter of practicality and equity, . . . permit this action to be overwhelmed by any number of groups seeking to protect similar interests." *Id.*

defendant in suit that would make it *harder* to vote by mail); *cf. Democratic Exec. Comm. of Fla. v. Detzner*, 347 F.Supp.3d 1017, 1025 (N.D. Fla. 2018) (recognizing that Democratic Party committee had standing to challenge practice that disenfranchised Democratic voters). Simply stating, as Movants do, that this lawsuit will change the "structur[e] of th[e] competitive environment," Mot. 8 (alterations in original) (quoting *Shays v. FEC*, 414 F.3d 76, 85 (D.C. Cir. 2005))— without also explaining why or how it will do so or, more importantly, how those changes will *injure* them—is insufficient. *See, e.g.*, *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 947 (7th Cir. 2000) (affirming denial of intervention as of right where "any detrimental impact" was "pure speculation").[6]

**Integrity of the election process.** Movants next cite their interest in "the integrity of the election process," Mot. 6 (quoting *LUPE*, 29 F.4th at 306), but Plaintiffs are *not* challenging Montana's rearticulated ban on double voting, *see* Mont. Code. Ann. § 13-35-210(2), (4), and Movants have not otherwise explained how the provisions of HB892 that Plaintiffs *do* challenge uphold the integrity of Montana's elections.

Moreover, courts have concluded that a generalized interest in election integrity is not a sound basis for intervention. *See, e.g.*, *Common Cause Ind. v.*

---

[6] In *Shays*, by contrast, members of Congress challenged campaign-finance regulations that would have indeed forced them into a competitive disadvantage. *See* 414 F.3d at 85.

*Lawson*, No. 1:17-cv-03936-TWP-MPB, 2018 WL 1070472, at \*4–6 (S.D. Ind. Feb. 27, 2018) (denying intervention to election-integrity foundation in voting-rights case); *cf. Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004) (denying intervention where putative intervenor's "concern is not a *legal* 'interest' . . . but a political or programmatic one"); *Donald J. Trump for President, Inc. v. Boockvar*, 493 F.Supp.3d 331, 376–82 (W.D. Pa. 2020) (Republican Party entities lacked Article III standing to vindicate generalized election-integrity interests). Movants cite *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989), and *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), to support their election-integrity argument, *see* Mot. 6, but these decisions simply recognized that a *state's* interest in promoting "public confidence in the integrity of the electoral process" can be relevant to the constitutional defense of a challenged election law, *Crawford*, 553 U.S. at 197 (plurality opinion). Neither case addressed intervention, let alone concluded that intervention must be granted to any interested party whenever a lawsuit implicates the electoral process.

**Adherence to Montana's election rules.** Movants claim an interest in "'demand[ing] adherence' to Montana's rules" and similarly, in support of their argument that this lawsuit will impact "the efficient use of their limited resources," suggest that HB892 "helps preserve resources for [their] get-out-the-vote efforts by ensuring that the voter rolls contain only voters eligible to participate in Montana

elections." Mot. 7 (alteration in original) (quoting *Shays*, 414 F.3d at 88). But the specific provisions of HB892 that Plaintiffs challenge criminalize maintaining multiple voter registrations and failing to provide prior registration information on voter-registration applications, neither of which has any relation to Montana's voter-eligibility requirements. *See* Mont. Code Ann. § 13-1-111 (voter qualifications); *id.* § 13-1-112 (rules for determining voter's residence); *id.* § 13-2-110 (requirements for voter-registration applications); *id.* § 13-2-402 (reasons for voter-registration cancellation). Accordingly, Movants are simply wrong to suggest that the challenged provisions of HB892 have any relation to a Montanan's eligibility to vote.

Moreover, courts have regularly denied intervention where movants relied on "the highly generalized argument that [they] have an interest in upholding the constitutionality of" a challenged law. *Miracle*, 333 F.R.D. at 155; *cf. Lance v. Coffman*, 549 U.S. 437, 442 (2007) ("The only injury plaintiffs allege is that the law . . . has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."). Similarly, Movants have not distinguished their generalized interest in upholding HB892 from Defendants' legally imposed obligation to do the same. *See Finke v. State ex rel. McGrath*, 2003 MT 48, ¶ 8, 314 Mont. 314, 65 P.3d 576 ("The State, through the Attorney General, has the

duty to defend the constitutionality of the statute."); *see also, e.g.*, *Trump*, 2020 WL 5517169, at *2 (denying intervention as of right where "question presented by this litigation is whether [election-related directive] is unconstitutional" and thus movant "would necessarily be tasked with defending the constitutionality of the [d]irective" and did not have divergent interests from existing governmental defendants); *Common Cause R.I. v. Gorbea*, No. 1:20-CV-00318-MSM-LDA, 2020 WL 4365608, at *3 n.5 (D.R.I. July 30, 2020) (denying intervention as of right where putative Republican Party intervenors "claimed a desire to 'protect' their voters from possible election fraud and to see that existing laws remained enforced" because "[t]hat is the same interest the defendant agencies are statutorily required to protect"); *Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2020 WL 6591397, at *1 (M.D.N.C. June 24, 2020) (similar).

**Diversion of resources.** Movants compare the purported diversion of their resources to Plaintiffs' injuries that confer standing to bring this action. *See* Mot. 7. But, as Plaintiffs allege in their complaint, HB892 changes the status quo by imposing new limitations and requirements on Montana voters and registrants— which in turn requires Plaintiffs to "retool[] training and informational materials and divert[] time and resources" in order to "inform individuals about the consequences of HB892's new restrictions." Compl. ¶ 12; *see also id.* ¶ 16. By contrast, Movants have not and cannot explain how they would need to divert

resources to educate voters about an injunction of HB892, which would restore the status quo and the requirements under which Montana's voter-registration system previously operated.

The Fifth Circuit's *LUPE* decision, on which Movants rely, provides a telling contrast. There, party committees intervened to defend an omnibus election bill in Texas "pertaining to voter registration, voting by mail, poll watchers, and more." *LUPE*, 29 F.4th at 304. That bill, the Fifth Circuit explained, changed the "*entire election landscape*," *id.* at 307 (emphasis added); the provision of HB892 that Plaintiffs challenge here, on the other hand, is limited to two aspects of the voter-registration process. Moreover, the omnibus bill challenged in *LUPE* expanded the rights of poll watchers, who are appointed *by political parties* and empowered under Texas law to observe elections "*on behalf of*" *political parties*. *Id.* (emphasis added) (quoting Tex. Elec. Code § 33.001). The political party intervenors in *LUPE* were thus able to demonstrate that they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process," and "the outcome of [that] lawsuit may change what [they] must do to prepare for upcoming elections." *Id.* at 306–07. Here, by contrast, Movants have provided no indication that they have invested resources to somehow take advantage of the provisions of HB892 that Plaintiffs seek to enjoin, let alone that they will need to divert those resources as a result of this lawsuit.

**Abrupt changes to election laws.** Movants suggest that, "[a]s political committees, [they] have interests in protecting themselves and their members from abrupt changes to election laws, particularly laws impacting the registration requirements for voters." Mot. 2. But, as Movants themselves acknowledge, the U.S. Supreme Court has cautioned against "[c]ourt orders affecting elections [that] result in *voter confusion* and consequent incentive to remain away from the polls." *Id.* at 8 (first alteration in original) (emphasis added) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) (per curiam)). Movants have not and cannot explain how enjoining the challenged provisions of HB892, and thus removing *new* limitations on the franchise, will either confuse voters or discourage them from voting in future elections. Instead, this lawsuit seeks to expand voting opportunities and *eliminate* the confusion caused by HB892's vague and overbroad language. Such changes would neither confuse nor disenfranchise anyone, least of all Movants' voters and supporters. *See Priorities USA*, slip op. at 5 (denying intervention as of right where putative Republican Party intervenors failed to "explain why changes to Wisconsin's absentee voting would confuse voters" and instead "present[ed] only vague and speculative arguments that voters—or rather, a disproportionate number of Republican voters—are likely to be so confused that they do not vote").

Nor, for that matter, can the relief Plaintiffs seek be considered "abrupt" by any measure. *Purcell* and its progeny emphasize the need for "clear guidance"

about voting rules in advance of "*impending* election[s]." 549 U.S. at 5 (emphasis

added). Unlike the situation in *Purcell*, which concerned an injunction issued one

month before an election, Plaintiffs are not seeking relief on the eve of voting; the

2024 election is still a year away.

> **Risk of settlement.** Finally, Movants cite the risk that Defendants will settle

this matter against Movants' interests. Mot. 8. But given that Movants and

Defendants share the same ultimate objective in this matter (defending the

constitutionality of the challenged provisions of HB892), and absent any indication

that Defendants will settle or otherwise fail to mount a robust defense of the

statute, this is not a compelling ground for intervention. *See, e.g.*, *Mi Familia Vota*

*v. Hobbs*, No. CV-22-00509-PHX-SRB, slip op. at 3 (D. Ariz. June 23, 2022)

(attached as Ex. 2) (denying intervention as of right where, "despite Movants'

arguments to the contrary, Movants and Defendants share the same objective:

defending the constitutionality of [challenged law]").[7]

---

[7] Denying Movants' intervention motion at this time does not mean that the Court
must "ignore [their] contention that Defendants may reach a settlement agreement
detrimental to Movants' interests. To alleviate these concerns, the Court [can]
require the parties to inform counsel for Movants of any proposed settlement
agreement" and "deny the Motion without prejudice so that Movants may seek
intervention if they have substantiated concerns about the adequacy of the defense
or objections to the terms of a settlement." *Mi Familia Vota*, slip op. at 5–6
(citations omitted).

\*     \*     \*

Ultimately, Movants' repeated invocation of the competitive landscape reveals more than they might have intended. Plaintiffs' lawsuit seeks to ensure that no otherwise-eligible Montana voter is deprived of their opportunity to cast a ballot or otherwise chilled from participating in the political process. The only way this suit could impair Republican Party interests is if their competitive advantage hinges on fewer Montanans being able to vote—a position that no court has endorsed as legitimate. *Cf., e.g.*, *Carrington v. Rash*, 380 U.S. 89, 94 (1965) ("'Fencing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible."). Absent any other clearly articulated connection between a cognizable interest and this lawsuit, Movants have not satisfied the requirements for intervention as of right.

### B. Movants have not made a compelling showing of inadequate representation.

Movants acknowledge that a "presumption of adequacy" applies when putative intervenors and existing parties share "the same ultimate objective," Mot. 10 (cleaned up), but they fall far short of rebutting that presumption with the "'compelling showing' to the contrary" required in this case, *Perry*, 587 F.3d at 951 (quoting *Arakaki*, 324 F.3d at 1086).

Indeed, Movants have not identified any arguments they intend to make if intervention is granted, let alone shown that Defendants are unwilling or incapable

15

of making those arguments themselves. *See Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, No. CV 22-168-M-DLC, 2023 WL 2712391, at *2–3 (D. Mont. Mar. 30, 2023) (denying intervention where "Applicants have not made any showing, let alone a compelling one, that [defendant] is unwilling to make, or incapable of making, all of Applicants' arguments or that Applicants would offer any necessary elements to the proceeding that [defendant] would neglect"); *Yazzie v. Hobbs*, No. CV-20-08222-PCT-GMS, 2020 WL 8181703, at *4 (D. Ariz. Sept. 16, 2020) (denying intervention where "Defendant is more than capable of defending the constitutionality of the [state law] without the Republican Movants' assistance" and thus "Republican Movants fail to rebut the presumption of adequate representation"); *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249-wmc, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (denying intervention as of right where Republican Party organizations did not "demonstrate[] any 'concrete conflict'" and thus did "not overcome the presumption of adequate representation").

At most, Movants "[a]rgu[e] that they advance the uniquely Republican interests of encouraging Republican voters to cast ballots and promoting Republican candidates" and "assert that they have discrete, partisan interests in defending" HB892. *Mi Familia Vota*, slip op. at 3. But, as courts within this circuit "have previously recognized, a would-be intervenor's partisan motivation—vis-à-

vis the government's obligation to its entire constituency, regardless of political affiliation—does not alone 'call into question [the government's] sincerity, will or desire' to defend the challenged law." *Id.* (alteration in original) (quoting *Yazzie*, 2020 WL 8181703, at *3); *see also, e.g.*, *Miracle*, 333 F.R.D. at 155–56 (declining to find inadequacy of representation and denying intervention under Rule 24(a) where proposed intervenors merely "allege[d]—and superficially at that—partisan bias").[8]

In short, because Movants share the same ultimate goal as Defendants, the lack of any showing of inadequate representation—let alone a compelling one— provides an independent ground to deny intervention as of right.

## II.    Movants should not be allowed permissive intervention under Rule 24(b).

Even if a proposed intervenor satisfies the threshold requirements under Rule 24(b), "it remains well within this Court's discretion to deny permissive intervention." *Trump*, 2020 WL 5517169, at *2 (citing *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). "In exercising this discretion," this Court has "agree[d] with the District of Idaho that 'the Court should avoid "piling on" litigants without cause.'" *Id.* (quoting *United States v. Howell*, No. 3:16-cv-00164-

---

[8] And, again, Movants never link the "particular interests of a partisan organization seeking to elect its own party representatives," Mot. 10, to the issues in this litigation; if Plaintiffs prevail, Republican voters will benefit as much as any other voters, *see supra* at 6–8.

BLW, 2018 WL 4500134, at *3 (D. Idaho Sept. 19, 2018)); *see also* Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

Here, these equitable concerns militate against permissive intervention. As discussed above, "Movants' participation in the lawsuit is not necessary to the adequate representation of their interests," *Mi Familia Vota*, slip op. at 5 (denying permissive intervention), and, "[a]s Defendant[s] seek[] the exact same objective as the Republican Movants, the Republican Movants' intervention would unnecessarily delay this time-sensitive proceeding," *Yazzie*, 2020 WL 8181703, at *4 (denying permissive intervention). Under these circumstances, Movants' participation in this lawsuit would not aid the Court's resolution of this matter, and would instead serve only to unnecessarily duplicate efforts, complicate the lawsuit, and "result in accumulating . . . arguments without assisting the court." *Allen Calculators v. Nat'l Cash Reg. Co.*, 322 U.S. 137, 141–42 (1944).

As the number of parties participating in a lawsuit increases, litigation becomes more complex, time-consuming, and expensive, burdening judicial economy. In a case like this—which implicates the right to vote and engage in political speech ahead of the 2024 election cycle—time is of the essence. Because the existing litigants already represent Movants' pertinent interests, permissive

intervention would impose costs without providing benefits, and should be denied. *See, e.g.*, *Bost*, 75 F.4th at 691 (affirming denial of permissive intervention "because it would use up the court's time and resources; because this is an election-law case that needs to be streamlined and decided quickly; and because [state political party's] legal interests and arguments are closely aligned with those of the [defendant], meaning [its] addition as a party would add little substance"); *Priorities USA*, slip op. at 11 (denying permissive intervention where "intervention would mean that the Court and the parties would have to read and respond to the arguments of [another] set . . . of defendants" and putative Republican Party intervenors did not satisfy their "burden . . . to show that their intervention would add some benefit to outweigh that added cost"); *Trump*, 2020 WL 5517169, at *2 (denying permissive intervention where movants would only be "piling onto the arguments advanced by the other parties to this litigation" in "defending the constitutionality" of challenged directive).

In short, Movants' "participation would be completely superfluous and therefore only wasteful of the time and attention of the existing parties and the court." *Priorities USA*, slip op. at 12 (cleaned up). Given the risks of delay,

prejudice, and unnecessary duplication of efforts, the equities weigh against permissive intervention.[9]

## CONCLUSION

Although "[c]ourts construe the intervention rule broadly in favor of putative intervenors," the purpose of intervention is to "promote[] a policy in favor of 'simplify[ing] future litigation involving related issues.'" *Northern Arapaho Tribe v. LaCounte*, No. CV-16-11-BLG-BMM, 2016 WL 8710178, at *3 (D. Mont. Apr. 4, 2016) (third alteration in original) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)). Here, because intervention would not simplify this lawsuit or any other, "[a]llowing [Movants] to intervene would not serve that

---

[9] If the Court grants permissive intervention, Plaintiffs request that it condition Movants' participation along the lines Movants themselves suggest in their motion, including adhering to the Court's deadlines and avoiding duplication of arguments made by Defendants. *See* Mot. 13 ("Movants [] commit to complying with all deadlines that govern the parties, working to prevent duplicative briefing, and coordinating with the parties on discovery[.]"). Notably, courts in this circuit have previously qualified permissive intervention in this way—for example, by prohibiting permissive intervenors from filing motions or briefs unless they contributed something that the existing parties did not. *See, e.g.*, *Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2021 WL 5217875, at *2 (D. Ariz. Oct. 4, 2021) (conditionally granting permissive intervention by ordering that "[i]f an intervenor believes that an issue affecting it has not been briefed, it may move for leave to file a brief, but it may not repeat any argument already raised in the briefing submitted by one of the original parties to the action"); *Ariz. Democratic Party v. Hobbs*, No. CV-20-01143-PHX-DLR, 2020 WL 6559160, at *1 (D. Ariz. June 26, 2020) (similar).

policy." *Id.* For this reason and those above, Movants' intervention motion should be denied.

Dated: November 7, 2023

By: _____

Raph Graybill
**GRAYBILL LAW FIRM, PC**
300 4th Street North
P.O. Box 3586
Great Falls, Montana 59403
rgraybill@silverstatelaw.net
ph. (406) 452-8566

Jonathan P. Hawley
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
jhawley@elias.law
ph. (206) 656-0179

Respectfully submitted,

Aria C. Branch*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue, Suite 400
Washington, D.C. 20001
abranch@elias.law
ph. (202) 968-4490

*Attorneys for Plaintiffs*

*\*Admitted pro hac vice*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief contains 4,916 words, excluding the

contents listed in D. Mont. L.R. 7.1(d)(2)(E).

Dated: November 7, 2023

_____

*Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on this 7th day of November, 2023, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 4,5 | CM/ECF |
| | Hand Delivery |
| | Mail |
| 1,2,3 | Certified Mail |
| | Fax |
| | E-Mail |

1. Christi Jacobsen
   Montana Secretary of State
   1301 E 6th Ave.
   Helena, MT 59601

2. Austin Knudsen
   Montana Attorney General
   215 N Sanders, Third Floor
   Helena, MT 59601

3. Chris Gallus
   Montana Commissioner of Political Practices
   1209 8th Ave.
   Helena, MT 59601

4. Dale Schowengerdt
   Landmark Law PLLC
   7 West 6th Ave., Ste. 518
   Helena, MT 59601
   dale@landmarklawpllc.com

5. Katie Smithgall
   Consovoy McCarthy PLLC
   1600 Wilson Blvd, Ste. 700
   Arlington, VA 22209
   katie@consovoymccarthy.com

*/s/ Emma Edwards*

3