Raph Graybill
**GRAYBILL LAW FIRM, PC**
300 4th Street North
P.O. Box 3586
Great Falls, Montana 59403
rgraybill@silverstatelaw.net
ph. (406) 452-8566

Aria C. Branch*
Christopher D. Dodge*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
abranch@elias.law
cdodge@elias.law
ph. (202) 968-4490

*Attorneys for Plaintiffs*

*\*Admitted pro hac vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANA PUBLIC INTEREST RESEARCH GROUP; MONTANA FEDERATION OF PUBLIC EMPLOYEES, | CV 23-70-H-BMM-KLD |
| Plaintiffs, | |
| vs. | **BRIEF IN OPPOSITION TO MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL [DOC. 83]** |
| CHRISTI JACOBSEN, in her official capacity as Montana Secretary of State; AUSTIN KNUDSEN, in his official capacity as Montana Attorney General; CHRIS GALLUS, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

EXHIBIT INDEX ..................................................................................... v

INTRODUCTION ..................................................................................... 1

LEGAL STANDARD ............................................................................... 3

ARGUMENT ............................................................................................ 4

I.     Defendants fail to show a likelihood of success on the merits and do not raise any substantial questions on the merits.................................... 4

     A.     The Court correctly determined Plaintiffs are likely to succeed on the merits of their overbreadth claim. ........................................ 4

     B.     The strength of Plaintiffs' vagueness claim further supports denying the stay. ................................................................................. 10

II.     The equitable factors weigh strongly against staying the preliminary injunction. .................................................................................... 11

     A.     Defendants have made no showing that they will suffer irreparable harm absent a stay................................................................. 11

     B.     The public interest, and the interests of others, are best served by maintaining the preliminary injunction. .............................. 14

     C.     *Purcell* does not require a stay. ........................................... 17

CONCLUSION ....................................................................................... 22

CERTIFICATE OF COMPLIANCE ...................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez,*
  585 U.S. 579 (2018)..................................................................12, 14

*All. for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ...............................................5

*Amawi v. Pflugerville Indep. Sch. Dist.,*
  No. 1:18-CV-1091-RP, 2019 WL 2029074 (W.D. Tex. May 8,
  2019) ......................................................................................11

*Ariz. All. for Retired Ams. v. Hobbs,*
  630 F. Supp. 3d 1180 (D. Ariz. 2022) .................................21

*Brnovich v. Democratic Nat'l Comm.,*
  141 S. Ct. 2321 (2021)...........................................................9

*Cal. Democratic Party v. Jones,*
  530 U.S. 567 (2000)..............................................................10

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
  657 F.3d 936 (9th Cir. 2011) ................................................6

*Common Cause Ind. v. Lawson,*
  937 F.3d 944 (7th Cir. 2019) ...........................................7, 8

*Doe #1 v. Trump,*
  957 F.3d 1050 (9th Cir. 2020) ..........................................3, 4

*Edwards Lifesciences Corp. v. Launey,*
  No. 8:23-CV-00304-WLH-ADSx, 2023 WL 4680774 (C.D. Cal.
  June 12, 2023)........................................................................11

*Giovani Carandola, Ltd. v. Bason,*
  303 F.3d 507 (4th Cir. 2002) ...............................................14

*Jacksonville Branch of NAACP v. City of Jacksonville,*
  No. 22-13544, 2022 WL 16754389 (11th Cir. Nov. 7, 2022)......................19, 20

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ..................................................................6

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
    32 F.4th 1363 (11th Cir. 2022) ...............................................................20

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) .............................................................4, 11

*Little v. Reclaim Idaho*,
    140 S. Ct. 2616 (2020)......................................................................13, 14

*Nken v. Holder*,
    556 U.S. 418 (2009)............................................................................3, 4

*Preminger v. Peake*,
    552 F.3d 757 (9th Cir. 2008) ..................................................................7

*Rodriguez v. Robbins*,
    715 F.3d 1127 (9th Cir. 2013) ..............................................................14

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) ..................................................................9

*Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*,
    No. 12-CV-00904-EAW-JJM, 2015 WL 1014588 (W.D.N.Y. Mar.
    9, 2015) ..................................................................................................16

*Thompson v. DeWine*,
    959 F.3d 804 (6th Cir. 2020) ................................................................20

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,
    555 F.3d 772 (9th Cir. 2009) ................................................................15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)................................................................................4, 16

**Statutes**

Mont. Code. Ann. § 13-1-107 ......................................................................21

Mont. Code. Ann. § 13-2-301 ......................................................................21

Mont. Code. Ann. § 13-35-210 ....................................................................18

iv

## EXHIBIT INDEX[*]

| No. | Description | Short Name |
|-----|-------------|------------|
| 1 | Plaintiffs' Notice of Supplemental Authority, *League of Women Voters of Montana v. Knudsen*, No. DV-16-23-1073 (Dist. Ct. Gallatin Cnty. Apr. 25, 2024) | Notice of Supplemental Authority |
| 2 | Response to Plaintiffs' Notice of Supplemental Authority, *League of Women Voters of Montana v. Knudsen*, No. DV-16-23-1073 (Dist. Ct. Gallatin Cnty. Apr. 26, 2024) | Response to Notice of Supplemental Authority |
| 3 | Order re Motion for Preliminary Injunction, *League of Women Voters of Montana v. Knudsen*, No. DV-16-23-1073 (Dist. Ct. Gallatin Cnty. Apr. 29, 2024) | Preliminary Injunction Order |

---

[*] The exhibits are attached to the declaration of Aria C. Branch, filed concurrently with this Brief.

# INTRODUCTION

The motion to stay filed by State Defendants and Intervenor-Defendants offers no reason for this Court to doubt its sound preliminary injunction order and fails to carry their burden to justify the extraordinary relief they seek. It should be denied.[1]

For one, Defendants fail to show any likelihood of success on the merits. Rather than seriously engage with the Court's analysis, Defendants pin their motion chiefly on their theory that the Court applied the wrong preliminary injunction standard. But the Court's order was clear: "Plaintiffs have demonstrated a likelihood of success on the merits concerning their overbreadth claim." (Doc. No. 79 ("Order") at 26.) That means Plaintiffs faced no heightened burden on the equities. Even so, the Court found the equities were lopsided in Plaintiffs' favor, meaning Plaintiffs satisfied their preliminary injunction burden under any test. Defendants offer only cursory critiques of the Court's actual analysis of the merits—ignoring its lengthy discussion of governing Ninth Circuit case law—and none raise any serious questions, nevermind establish that Defendants have a likelihood of success on appeal.

Defendants fare no better on the equitable factors. With respect to irreparable harm, they offer only a single short and conclusory paragraph that does not support

---

[1] Plaintiffs refer to State Defendants and Intervenor-Defendants collectively as "Defendants" herein.

finding that any serious harm will come to Defendants in the absence of a stay. Defendants entirely ignore county clerk testimony that this Court relied upon to conclude that "Defendants will suffer no harm if they are enjoined" from enforcing HB 892's criminal penalties. (Order at 31.[2]) This meager showing of irreparable harm is a sufficient basis on its own to deny the motion. And the remaining equitable factors—which Defendants barely address aside from repeating inapplicable *Purcell* arguments, *see infra* Part II(C)—cut strongly in favor of maintaining the injunction. As the Court recognized, preserving the "ability of Montana voters to register to vote without fear of felony criminal penalties" means the public interest weighs heavily against a stay. (*Id*. at 32.)

State Defendants' own gamesmanship also weighs against granting their motion. Shortly after the Court issued its injunction, State Defendants filed a response to a notice of supplemental authority regarding this Court's Order in parallel state court proceedings, arguing the injunction in this case undercut any claim of irreparable harm to the plaintiffs there. In reliance on that representation, the state court denied a pending preliminary injunction motion as moot. But only days later, State Defendants asked this Court to stay the very injunction they relied upon to moot out the state court motion. In other words, at the same time that

---

[2] The motion does not even assert that Intervenor-Defendants face any prospect of irreparable harm.

Defendants are attempting to stay the injunction (and undo it on appeal), they have used it as a sword to prevent relief in the state court action. Their effort to play the two actions against each other should not be rewarded.

Finally, Defendants' motion does not undercut this Court's proper application of *Purcell*. Defendants point to no case where a court has granted a stay *more than half a year out* from an election based on *Purcell*, nor do they anywhere explain how the Court's injunction will in fact disrupt Montana's elections.

The motion to stay should be denied.

## LEGAL STANDARD

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). The "party requesting a stay pending appeal 'bears the burden of showing that the circumstances justify'" such extraordinary relief. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 433–34). When weighing a stay request, courts consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation omitted). "The first two factors

. . . are the most critical." *Id.* In particular, "if the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curium) (citing *Nken*, 556 U.S. at 433–34). The Court need only "consider the last two factors if the first two factors are satisfied." *Doe #1*, 957 F.3d at 1058.

## ARGUMENT

### I.   Defendants fail to show a likelihood of success on the merits and do not raise any substantial questions on the merits.

#### A.   The Court correctly determined Plaintiffs are likely to succeed on the merits of their overbreadth claim.

This Court got it exactly right—Plaintiffs are likely to succeed in showing that "a substantial number of" HB 892's "applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." (Order at 18 (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)); *see also* Doc. 12 ("PI Mem.") at 19–25.) Accordingly, Plaintiffs have "demonstrated a likelihood of success on the merits concerning their overbreadth claim." (Order at 26 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).)

Rather than grapple with the substance of the Court's Order, Defendants first claim the Court applied the wrong preliminary injunction standard. (*See* Doc. 84 ("Stay Mot.") at 5–6.) According to them, this Court found only that Plaintiffs raised

"substantial questions" about the merits of their overbreadth claim, and thus should have been held to a higher standard on the equitable factors. (*Id.*) But that is simply wrong. The Court *repeatedly* stated that it determined Plaintiffs are likely to succeed on the merits and not only that they raised substantial questions. (*See, e.g.*, Order at 17 ("The Court determines that the Plaintiffs have demonstrated likely success on the merits of their overbreadth claim."); *id*. at 26 ("Plaintiffs have demonstrated a likelihood of success on the merits concerning their overbreadth claim.").) In reaching this conclusion, the Court made clear that it was applying the *Winter* standard for preliminary injunctions—rather than the Ninth Circuit's alternative sliding scale approach—in assessing "Plaintiffs' vagueness claim and overbreadth claim . . . with respect to their likelihood of success on the merits." (*Id.* at 14.) Defendants nowhere acknowledge any of this—all of which is clear from the Court's Order—and their resort to semantic word games as their lead merits argument reflects the weakness of their motion.[3]

---

[3] Even if Defendants were correct, there would still be no reason to stay the injunction on these grounds because applying the "sliding scale approach" yields the same outcome. Plaintiffs have raised, at minimum, substantial questions on the merits. And the Court's analysis of the equitable factors reflects that they "sharply" weigh in favor of Plaintiffs. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1133 (9th Cir. 2011); *see also infra* § 2 (discussing equitable factors). For example, the Court found that, on the one hand, an injunction would preserve the "ability of Montana voters to register to vote without fear of felony criminal penalties," whereas "Defendants will suffer no harm" from an injunction. Order at 31–32. These clear-cut findings provide more than a sufficient basis to find that Plaintiffs have satisfied

Defendants only briefly discuss the merits of Plaintiffs' overbreadth claim, (*see* Stay Mot. at 6–8), but offer no reason for the Court to second-guess its sound analysis. The Court correctly identified the overbreadth standards articulated by the Supreme Court, which asks whether "a substantial number of" HB 892's "applications are unconstitutional, judged in relation to the statue's plainly legitimate sweep." (Order at 18 (quoting *Stevens*, 559 U.S. at 473).) The Court then properly weighed these competing considerations. (*See id.* at 17–26.) It first "determine[d] that the legitimate sweep of HB 892 is the prohibition of double voting" based upon its review of the statute's text and title, as well as statements from the bill's proponents. (*Id.* at 19–20.) Next, it correctly found that "[t]he multiple registration prohibition and prior registration disclosure requirements both implicate voter registration *beyond* HB 892's prohibition of double voting," a particularly significant finding, given that the Ninth Circuit has recognized that "voter registration is speech protected by the First Amendment." (*Id.* at 20 (emphasis added) (quoting *Preminger v. Peake*, 552 F.3d 757, 765 (9th Cir. 2008)).)

The Court walked through the "useful example" provided by the Ninth Circuit's *en banc* decision in *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) ("*Comite de Jornaleros*"), (Order

---

any formulation of the preliminary injunction standard. *See, e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1084–85 (9th Cir. 2009) (affirming preliminary injunction where the "court's analysis implicitly" satisfied alternative formulation of test).

at 21–22)—a case Defendants ignore in wrongly suggesting this Court reached its decision based on out-of-circuit dicta (*see* Stay Mot. at 6). The Court explained that *Comite de Jornaleros* set forth "overbreadth principles" that applied here, namely that a law that "burden[s] substantially more [] speech than reasonably necessary to achieve its purpose" is overbroad. (Order at 22–23 (citing *Comite de Jornaleros*, 657 F.3d at 949).) The Court concluded that, as in *Comite de Jornaleros*, HB 892 "suppress[es] a great quantity of speech that does not cause the evils that it seeks to eliminate." (*Id.* (quoting *Comite de Jornaleros*, 657 F.3d at 950); *see also id.* at 25 (explaining HB 892's overbreadth will "burden protected political activity through the imposition of felony criminal penalties, even when a registrant does not double vote or has no intention of double voting".)

Ignoring the Court's discussion of Ninth Circuit case law (including *Peake* and *Comite de Jornaleros*), Defendants instead chiefly complain that the Court improperly relied on the Seventh Circuit's decision in *Common Cause Indiana v. Lawson*, 937 F.3d 944, 960 (7th Cir. 2019), which this Court noted "analyzed a different, yet related, law concerning voter registrations." (Order at 23.) Defendants suggest that *Lawson*—a case that concerned whether Indiana's voter list removal laws complied with the National Voter Registration Act ("NVRA")—actually "reaffirms . . . exactly what HB 892 requires." (Stay Mot. at 6.) But this is nonsensical. The issue in this case is not whether HB 892 complies with the NVRA.

What was relevant about *Lawson*, and what this Court discussed in its Order, is the Seventh Circuit's (1) recognition that an individual may have legitimate reasons to be registered in two places, and (2) refusal to conflate double registration with double voting. (Order at 24–25 (discussing *Lawson*, 937 F.3d at 960); *see also* PI Mem. at 20–22.) The Court properly cited *Lawson* as part of its overbreadth analysis not as binding authority, but rather as a persuasive discussion of and recognition by a federal court of appeals as to why a voter may have innocuous reasons for having multiple voter registrations. (*See* Order at 24–25.)

Defendants contend that this Court—and apparently the Seventh Circuit as well—relied upon "fanciful" "hypotheticals" in concluding that voters may have legitimate reasons for having multiple registrations. (*See* Stay Mot. at 7.) But the scenarios discussed—such as moving for work or attending school—are everyday occurrences. (*See, e.g.*, Doc. 13-1 at ¶¶ 11, 13–14; Doc. 13-2 at ¶¶ 14–15.) Indeed, that is why *millions* of Americans have historically been registered in multiple states, yet incidents of double voting have routinely been recognized as rare and sparse. (*See* PI Mem. at 23–24; *see also* Order at 24–25.) Beyond their meritless and largely tangential assertion that this Court erred by relying upon *Lawson*, Defendants offer no further argument in support of their claim that this Court was wrong to conclude that HB 892 covers a substantial amount of protected speech.

Defendants' only remaining argument on the merits is that the Court should not have concluded that the State "fail[ed] to draw a sufficient connection between maintaining multiple voter registrations and prohibiting double voting." (Stay Mot. at 7.) But the Court had ample ground to reach that conclusion, particularly in view of Defendants' failure to identify any instances of double voting in Montana that would have been prevented by HB 892's challenged provisions. Merely invoking the generic specter of "fraud" is not enough to overcome these provisions' clear overbreadth. *See Soltysik v. Padilla*, 910 F.3d 438, 448 (9th Cir. 2018) ("the existence of a state interest . . . is a matter of proof" (quoting *Duke v. Cleland*, 5 F.3d 1399, 1405 n.6 (11th Cir. 1993))); (Doc. 33 at 7.)

Defendants rely too heavily on the Supreme Court's holding in *Brnovich*, (Stay Mot. at 7), which held that "[r]ules that are supported by strong state interests *are less likely to violate § 2*," of the Voting Rights Act. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2340 (2021). This is not a Section 2 Voting Rights Act case, and Defendants have hardly established that HB 892 is "supported by strong state interests." Indeed, all Defendants can muster on the point is to note that several documents in the record suggest it "help[s]" election officials to be able to identify voters who have multiple registrations. (Stay Mot. at 7–8 (citing Doc. 13-14, Doc. 13-16).) That in no way explains why it is necessary for Montana to *criminalize* failing to disclose a past registration in order to satisfy any legitimate state interest,

9

particularly given that Plaintiffs do not challenge Montana's longstanding practice of requesting such information on voter registration forms.

Rather than merely invoking abstract state interests, Defendants must show how the state interests are served "*in the circumstances of this case*." *California Democratic Party v. Jones*, 530 U.S. 567, 584 (2000) (emphasis in original). The Court correctly concluded that they failed to do so. (Order at 31–33.) Because Defendants' limited and misguided arguments offer this Court no reason to revisit its sound conclusion that Plaintiffs are likely to succeed on the merits of their overbreadth claim, nor do Defendants raise any "substantial questions" about the merits that could plausibly support a stay, their motion should be denied.

## B.   The strength of Plaintiffs' vagueness claim further supports denying the stay.

The Court can and should deny the motion to stay based on its conclusions regarding Plaintiffs' overbreadth claim on their own, but Plaintiffs' vagueness claim separately and independently provides additional reason to conclude that Defendants are unlikely to succeed on the merits. (*See* Doc. 12 at 11–18; Doc. 33 at 4–6.)

The Court recognized Plaintiffs' vagueness claim likely raised "substantial questions going to the merits," (Order at 17), and expressed "concern[] that voters lack notice as to what Montana law requires of them when registering to vote," (*id.* at 16-17.) The Court's concern is well founded. After all, the "plain language of HB 892 does little to clarify" the matter, (*id.* at 16), and "vagueness scrutiny is more

10

stringent" where, as here, "a law implicates First Amendment rights," (*id.* at 15 (quoting *Cal Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001)).) Defendants' motion nowhere acknowledges the strength of Plaintiffs' vagueness claim, which on its own provides an independent basis for the Court's injunction. *Cf. Amawi v. Pflugerville Indep. Sch. Dist.*, No. 1:18-CV-1091-RP, 2019 WL 2029074, at *3 (W.D. Tex. May 8, 2019) (denying motion to stay pending appeal where Court found "several, independent grounds for finding that Plaintiffs are likely to succeed on the merits of their claims that the statute violates the First Amendment," including on a vagueness claim); *Edwards Lifesciences Corp. v. Launey*, No. 8:23-CV-00304-WLH-ADSx, 2023 WL 4680774, at *5 n.2 (C.D. Cal. June 12, 2023) (explaining that "a plaintiff need only show likelihood of success on one claim to justify injunctive relief." (citation omitted)).

## II.  The equitable factors weigh strongly against staying the preliminary injunction.

### A.  Defendants have made no showing that they will suffer irreparable harm absent a stay.

Defendants have not met their burden of showing that they will suffer irreparable harm absent a stay of the Order, which alone is a sufficient reason to deny their motion. *See Leiva-Perez*, 640 F.3d at 965. In fact, Intervenor-Defendants fail to claim *any* irreparable harm at all, and the cursory arguments advanced as to the State Defendants are unpersuasive.

*First*, Defendants assert that the State Defendants will suffer irreparable harm from the State's purported inability to "conduct[] this year's elections pursuant to a statute enacted by the Legislature." (Stay Mot. at 8 (quoting *Abbott v. Perez*, 585 U.S. 579, 602 (2018)).) But that claim is undermined by the State's statements and actions with respect to the challenged provisions, as well as the State's own position in this litigation, which make clear that enjoining the challenged provisions of HB 892 will not result in any upending of the state's ability to conduct elections. Defendants have insisted throughout this litigation that the challenged provisions do no more than "bolster" the State's existing "ban on double voting" by attaching criminal prohibitions to the failure to disclose a prior registration and for maintaining multiple registrations. (Doc. 30 at 26; *see also id.* at 2, 24 n.10 (State Defendants describing challenged provisions as "codification of longstanding practice").) The Secretary's guidance on HB 892 supports this. As the Court noted in its Order, the Secretary advised county election officials who carry out the state's election laws not to change the "practice [they] were following before." (Order at 13 (citing testimony of Ravalli County Clerk at Doc. 62 at 108).)

By contrast, in cases where courts have stayed injunctions because of irreparable harm to the state, they have found (and heavily stressed) that the injunctions at issue worked significant changes on the state's enforcement of its election laws. *See Abbott*, 585 U.S. at 593, 602 (emphasizing that injunction at issue

prevented Texas from using the districting plans enacted by the legislature, which would have required a court-drawn map for the state to hold elections); *Little v. Reclaim Idaho*, 140 S. Ct. 2616, 2617 (2020) (Robert, C.J., concurring) (explaining that injunction at issue created "an entirely new system" for Idaho clerks to learn and enforce).[4] Defendants cannot have it both ways—they may not, in the first instance, argue that HB 892 does little to change election administration in Montana, only to turn around and claim irreparable harm from the Court's injunction. In any event, in view of the record before it, the Court had ample basis to conclude that the State will "suffer no harm" from enjoining the challenged provisions during the pendency of this action. (*See* Order at 31 (discussing state court testimony and citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).)

*Second*, even if the State retained some interest in enforcing the challenged provisions until a final judgment issues, its claim to irreparable harm would still fail. That is because the State "is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found

---

[4] For similar reasons, to the extent Defendants argue that the Court's preliminary injunction prevents Montana from continuing to enforce its election laws in the manner it did *prior* to HB 892, (*see* Stay Mot. at 11; Doc. 30 at 24), that assertion is incorrect. The injunction is careful to prevent enforcement only of the new criminal prohibitions attached to the challenged provisions—which does not impact pre-HB 892 practices. (*See* Order at 33–34.) And, as to the prior-registration disclosure requirement, Montana's registration form *already* required disclosure of prior registrations—HB 892 introduced criminal penalties for failing to include such information on the form.

unconstitutional." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (cleaned up); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (rejecting government's argument that preliminary injunction caused irreparable injury, noting that its arguments were "obviously premised on the government's view of the merits because it cannot suffer harm from an injunction that merely ends an unlawful practice").

The authority cited by Defendants only proves the point. Both *Abbott* and *Little* explain that the State is only harmed by enjoining enforcement of *lawful* provisions. *See Abbott*, 585 U.S. at 602 (recognizing that injunction at issue could not cause harm if the statute is "unconstitutional"); *Little*, 140 S. Ct. at 2617 (Robert, C.J., concurring) (explaining that injunction at issue implicated Idaho's "sovereign interest in the enforcement of initiative requirements that are *likely consistent with the First Amendment*" (emphasis added)). This Court, as already explained, correctly found that the challenged provisions here are likely unconstitutional, and Defendants therefore cannot rely on purported sovereign interests in enforcing them to establish irreparable harm in the absence of a stay.

**B.    The public interest, and the interests of others, are best served by maintaining the preliminary injunction.**

Defendants have also not shown that the equities or public interest favor a stay of the Order. As this Court correctly determined, "[t]he public interest supports the issuance of an injunction against HB 892's multiple registration prohibition and prior

14

registration disclosure requirement" as the "public maintains a strong interest in exercising the fundamental political right to vote." (Order at 32 (citation omitted).) And here, whether a voter can "vote without fear of felony criminal penalties appears to substantially implicate the public's interest in protecting the franchise." (*Id.*) The challenged provisions also undermine Plaintiffs' protected voter registration efforts by inflicting financial harm on Plaintiffs and by frustrating "activities [that] serve as a method by which many eligible Montanans register to vote, thereby enabling them to exercise their right to the franchise." (*Id.*) While courts have recognized a public interest in preventing disruptions of the election process, the Court carefully weighed the facts surrounding HB 892 and its enforcement and correctly concluded that the preliminary injunction will have no such impact here. *See infra* Part II.C (addressing Defendants' *Purcell* arguments).

In balancing the equities, the Court should also consider the manner in which State Defendants have used the Court's Order to their own benefit in parallel state court proceedings prior to seeking this stay. *Cf. United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778–79 (9th Cir. 2009) (concluding that a party was equitably estopped from relying on a position it had defeated in previous litigation because such "gaming of the courts [would] allow it the possibility of prevailing on the very position it successfully discredited while attempting to avoid preliminary injunction"). After all, a "request for a stay is an appeal to equity" and "he who

comes into equity must come with clean hands." *Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, No. 12-CV-00904-EAW-JJM, 2015 WL 1014588, at *4 (W.D.N.Y. Mar. 9, 2015) (citations omitted); *cf. Winter*, 555 U.S. at 24.

Here, without acknowledging that they would immediately seek a stay and reversal of this Court's Order, State Defendants relied on that Order to successfully defeat a parallel state-court request for similar relief against HB 892. (*See* Exs. 1, 2, 3.) On April 25, the day after this Court issued its Order, the state-court plaintiff filed a notice of supplemental authority in parallel state court proceedings ("*League of Women Voters of Montana*") to inform the state court of this Court's Order. (Ex. 1.) State Defendants filed a response, arguing this Court's injunction "undermines Plaintiffs' assertion of irreparable harm" in that case and that because "Defendants are already enjoined . . . granting an injunction would be unnecessary and duplicative." (Ex. 2 at 2–3.)

Yet, just a few days later, State Defendants urged this Court to stay the very injunction that it said removed any threat of irreparable harm to the state-court plaintiffs. State Defendants' efforts achieved its intended effect with respect to the state court action—the state court denied the pending preliminary injunction motion in *League of Women Voters of Montana* as moot. (*See* Ex. 3.) To now set aside the injunction would prove highly inequitable to both the Plaintiffs here, as well as those in *League of Women Voters of Montana*, by permitting State Defendants to play the

two actions off one another to avoid injunctive relief in either—a classic game of "heads I win, tails you lose." These actions and representations reflect an unfair gaming of courts that this Court should not countenance. At the very least, these circumstances call into question any hardship State Defendants now claim to be suffering from the Order.

### C. *Purcell* does not require a stay.

The Court's Order merely reinstated the preexisting status quo before the challenged provisions in HB 892 were enacted, which allows voters to register to vote without fear of being criminally prosecuted for failing to cancel or disclose other voter registrations. The Court properly analyzed relevant case law applying the *Purcell* principle and correctly determined that *Purcell* did not bar preliminary relief in this case, based both on the time until the next election and the scope and nature of requested relief. (Order at 11–14.) The November 5, 2024 general election is still well over five months away—far from the time horizon for other cases applying *Purcell*. (*Id.* at 11–12.) Moreover, even with respect to the upcoming primary election, as this Court recognized, "enjoining HB 892's multiple registration prohibition and prior registration disclosure requirement likely will not lead to voter confusion and disenfranchisement." (*Id.* at 12.) As the Court noted, Montana's elections officials have testified in related proceedings that the enjoined laws do not change how they administer Montana's voter registration procedures. (*Id.* at 13.)

Indeed, it is hard to fathom how the Court's injunction could, as a practical matter, disrupt any upcoming elections in Montana. The preliminary injunction bars the State from imposing criminal penalties on voters who fail to provide prior registration information on their voter registration applications, and for "purposefully remain[ing] registered" at another place. (*See id.* at 33–34.) The State is free to continue using the very same voter registration form and to continue requesting that registrants provide prior registration information, as it did prior to HB 892. The Court's injunction is clear that "[a]ll other provisions of HB 892, codified in Mont. Code. Ann. § 13-35-210 shall remain in effect." (*Id.* at 34.) Nowhere do Defendants meaningfully explain how returning to the status quo prior to HB 892 creates a "significant" risk of voter confusion. (Stay Mot. at 11.[5])

Rather than meaningfully explain why *Purcell* should apply, Defendants begin their argument by citing to an undistinguished mass of cases applying *Purcell* in 2020 during the COVID-19 pandemic. (*See id.* at 3.) The upshot of Defendants' page-long string cite is that—notwithstanding any of the facts or circumstances in those cases—the same result should automatically apply here. (*Id.*) But even a

---

[5] Without acknowledging the irony, Defendants insist that the Court's Order "now leaves open the question of whether registered voters may legally remain registered in other jurisdictions." (Stay Mot. at 11.) But that, of course, is the precise problem HB 892 introduced in the first place, introducing ambiguity as to whether *existing* voters registered in multiple places were required to cancel additional registrations or risk criminal sanctions. (*See, e.g.*, Doc. No. 12 at 13–17.)

cursory review of those cases shows they are different in critical ways. For one, *all* concerned state laws governing how ballots were cast or counted around election day. In contrast, the challenged provisions here relate solely to *criminal prosecutions* for voter *registration*—not the casting or counting of ballots on or shortly before election day. *None* of the cases that Defendants cite involved a similar attempt to criminalize commonplace voter registration behavior. Just as critically, this Court concluded that HB 892 does not practically impact how Montana election officials perform their voter registration duties. (Order at 12–14.) Notwithstanding the injunction, prospective voters still must complete the same voter registration form, which asks for previous registration information. The difference is that with the injunction in place, voters are no longer at risk of being criminally prosecuted for failing to affirmatively cancel another voter registration, or for failing to list a previous voter registration on the voter registration application. The Court's injunction—entered more than half a year before the 2024 general election—bears no resemblance to the cases relied upon by Defendants.

Indeed, the timing of the Court's injunction provides yet more reason to set aside Defendants' *Purcell* argument. As the Court noted, the "2024 general election likely occurs outside *Purcell's* concern." (*Id.* at 12); *see also Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022) (declining to stay an injunction issued five months prior to an election

as beyond the "outer bounds" of *Purcell*).[6] While Defendants insist the Court's order

"falls within *Purcell's* forbidden window," (Stay Mot. at 10), they cite no case law

supporting the stay of an injunction granted more than half a year before an election.

They passingly contend that *Thompson v. DeWine* granted a "stay six months before

the election," (*id.*), but ignore that *Thompson* concerned state ballot petition

deadlines that were only roughly two months away at the time the injunction was

issued, *see* 959 F.3d 804, 806–07, 810 (6th Cir. 2020) (explaining state law required

ballot petition signatures to be submitted "125 days before the election for a

constitutional amendment and 110 days before the election for a municipal

ordinance"). To grant Defendants a stay based on *Purcell* so far out from the general

---

[6] In *Jacksonville Branch of NAACP*, the Eleventh Circuit distinguished its earlier
decision in *League of Women Voters of Florida, Inc. v. Florida Secretary of State*, 32
F.4th 1363 (11th Cir. 2022), noting it reached the *Purcell* principle's "outer bounds"
in staying an injunction less than four months before an election. 2022 WL
16754389, at *2 (quoting 32 F.4th at 1372). This case is more akin to *Jacksonville
Branch of NAACP*, where the Eleventh Circuit declined to apply *Purcell* to an
injunction issued five months before an election, than *League of Women Voters of
Florida*, which concerned "a host of election provisions," Stay Mot. at 10, several
of which concerned the counting and casting of ballots, and which also required the
state to re-train election workers. 32 F.4th at 1371. As this Court correctly
recognized, this case does not implicate similar requirements. (*See* Order at 12–13
("The evidence before the Court . . . indicates . . . that the multiple voter registration
prohibition and prior registration disclosure requirements likely *do not* substantively
change Montana voting registration procedure.").)

election—and on such a threadbare claim of voter confusion and disruption—would extend that principle into uncharted waters.[7]

In cases like this one, courts have declined to stay injunctions. For example, in *Arizona Alliance for Retired Americans v. Hobbs*, 630 F. Supp. 3d 1180 (D. Ariz. 2022), the district court enjoined a state law that made it a felony to "[k]nowingly provide[] a mechanism for voting to another person who is registered in another state," holding the provision was unconstitutionally vague. *Id.* at 1186–88, 1199. The court then denied the state defendants' emergency motion for a stay pending appeal, explaining that the injunction "leav[es] the status quo in place," which "is what *Purcell* demands," and that "the Court fails to see how reversing its own order will cause less confusion[.]" Order at 5, *Ariz. All.*, 2:22-cv-01374-GMS (D. Ariz. Oct. 3, 2022), Doc. 95. This Court's injunction likewise leaves a longstanding status quo ante in place and ensures that voters can register to vote without fear of being criminally prosecuted. Defendants offer no persuasive reason to disturb that injunction.

---

[7] While Defendants claimed that "[t]he deadline for registering for the Montana state primary election is days away," (Stay Mot. at 10), that deadline has now closed. *See* Mont. Code. Ann. §§ 13-1-107, 13-2-301.

## CONCLUSION

For the reasons above, Defendants' motion to stay the injunction pending appeal should be denied.

Dated: May 15, 2024                     Respectfully submitted,

By: /s/ Raph Graybill                   Aria C. Branch*
Raph Graybill                           Christopher D. Dodge*
**GRAYBILL LAW FIRM, PC**               **ELIAS LAW GROUP LLP**
300 4th Street North                    250 Massachusetts Avenue NW, Suite 400
P.O. Box 3586                           Washington, D.C. 20001
Great Falls, Montana 59403              abranch@elias.law
rgraybill@silverstatelaw.net            cdodge@elias.law
ph. (406) 452-8566                      ph. (202) 968-4490

                                        *Attorneys for Plaintiffs*

                                        *Admitted pro hac vice*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief contains 5,378 words, excluding the

contents listed in D. Mont. L.R. 7.1(d)(2)(E).

Dated: May 15, 2024                    /s/ Raph Graybill
                                       *Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 15th day of May, 2024, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| __1, 2, 3__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.    Dale Schowengerdt
Landmark Law PLLC
7 West 6th Ave., Ste. 518
Helena, MT 59601
dale@landmarklawpllc.com

2.    Kathleen Smithgall
Thomas McCarthy
Conor Woodfin
Consovoy McCarthy PLLC
1600 Wilson Blvd, Ste. 700
Arlington, VA 22209
katie@consovoymccarthy.com
tom@consovoymccarthy.com
conor@consovoymccarthy.com

3.    Thane Johnson
Michael Russell
Michael Noonan
Alwyn Lansing
Montana Department of Justice
P.O. Box 201401
Helena, MT 59620
thane.johnson@mt.gov
michael.russell@mt.gov
alwyn.lansing@mt.gov
michael.noonan@mt.gov

/s/ Raph Graybill
GRAYBILL LAW FIRM, P.C.